WASHINGTON TIN PLATE CO. v. TALIAFERRO et al.

(Circuit Court of Appeals, Third Circuit. November 16, 1914. Rehearing Denied December 16, 1914.)

No. 1858.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TIN PLATE CLEANING MACHINE.

The Taliaferro and Reynard patent, No. 709,184, for a tin plate cleaning machine, *held* not anticipated, valid and infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by John C. Taliaferro and Edwin Norton against the Washington Tin Plate Company. Decree for complainants, and defendant appeals. Affirmed.

For opinion below, see 214 Fed. 583.

Francis T. Chambers, of Philadelphia, Pa., and V. H. Lockwood, of Indianapolis, Ind., for appellant.

C. L. Sturtevant and Eugene G. Mason, both of Washington, D. C., and Joseph C. Fraley, of Philadelphia, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. In a suit in equity brought by John C. Taliaferro and Edwin Norton against the Washington Tin Plate Company in the United States District Court for the Western District of Pennsylvania, praying that the defendant, the Washington Tin Plate Company, be enjoined from infringing United States letters patent No. 709,184, for a tin plate cleaning machine, granted September 16, 1902, to Taliaferro and Reynard, and owned by the complainants, the District Judge held the patent valid, and claims 1, 2, 3, 4, 5, 6, 10, and 13 of the letters patent infringed by the device of the defendant, and a decree was entered against the defendant for an injunction and a reference for an accounting. This is an appeal from that decree.

The questions raised by the pleadings involve, first, the validity of the patent, or its invalidity for lack of novelty and invention; and, second, its infringement or noninfringement.

In the manufacture of tin plates, the two sides of metal plates are coated with tin and then subjected to a bath of hot palm oil, which leaves upon the freshly tinned plates a coating of grease. Before the plates are ready for commercial use, it is necessary to remove the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

grease, and this has been done, as shown by the history of the industry, by taking the plates from the hot oil bath and putting them through a cleansing machine of one of the various patterns and types that have been used in the art. Of such machines, those now most generally in use in this country are the machines made by the Anderson Foundry & Machine Company and used by the defendant, and the machines of the complainants made under the patent in suit, which for convenience will hereafter be referred to respectively as the Anderson machine and the Taliaferro machine.

In the main features of their construction these two machines are similar, the difference between them, if any, being in the method of their operation and the manner in which they attain the result intended.

In construction and in function, the Taliaferro machine is in harmony with the mentioned claims and specification of the Taliaferro patent. It is clear that the Anderson machine substantially follows the same claims and specification of the Taliaferro patent, except in one or two particulars, which, it is claimed, distinguish it from the Taliaferro machine and save it from the charge of infringement.

In view of the very narrow point in controversy, we deem it unnecessary to indulge in a consideration of the claims and specification of the patent in this opinion at the length which such a consideration would entail. Therefore a brief statement of the construction and function of the two machines will be sufficient to present the point in controversy.

The Taliaferro machine comprises a box in which are arranged in pairs fibrous-covered rolls, so adjusted that they revolve at different speeds, and so set that they are separate and not in contact, either with one another or with the plates as they pass between them, and so operated as to cause the bran in which they are enveloped to be compressed into and passed through the opening between them in such a fashion and at such a speed as to cause the bran (not the rolls) to hold or grip the plates and feed or pass them between the rolls, and at the same time cleanse them of grease, all of which is effected by the variation of the speed of the rolls and of the different speed and agitation of the bran.

In construction, the Anderson machine is similar to the Taliaferro machine in all substantial respects save one, and that is, the fibrous-covered rolls, being likewise arranged in pairs, and being likewise adjusted to revolve at different speeds, and being likewise enveloped in bran, are not set apart, but, as it is alleged, are in contact one with the other; and based upon this difference, it is claimed that the operation of the Anderson machine is different from that of the Taliaferro machine, in that the rolls themselves grip and feed the plates and at the same time rub and cleanse the plates with the aid of such of the bran as may adhere to their surfaces. From this it is apparent that the controversy in this case is contracted to what happens between the rolls of the two machines. If the rolls of the Anderson machine are in contact, and if the function of the Anderson machine is not to feed and cleanse the plate by moving layers of bran between the sides of the plate and the rolls, but to feed and cleanse the plate

by the motion and rubbing of the rolls themselves, then the Anderson machine does not infringe the claims of the patent in suit; while, on the contrary, if the rolls of the Anderson machine are not pressed in contact one with the other, but are apart, and the plate is not fed by the rolls, and is not cleansed by being rubbed by them, but these results are accomplished by the propulsion and the rubbing of layers of bran moved by the rolls along the upper and lower surfaces of the plate, then the Anderson machine is identical in function, as it is similar in construction, with the Taliaferro machine, and the defendant has infringed the patent. Stating the case conversely, if the machine of the patent in suit operates in feeding and in cleansing the plate by rolls in contact with the plate, and not by causing to flow layers of bran which by their own motion feed and cleanse the plate, then the patent is void, because anticipated, and the defendant is not guilty of infringement.

The defendant claims that the patent of the plaintiffs is void because their invention was anticipated, evidence of which was adduced by the defendant in the form of earlier patents, all of which were relied upon, but two of which were especially urged. Theses two patents are British patents, and are known as the Jenkins patent and the Player and Mainwaring patent.

The British patent to Jenkins, No. 1,892 of 1877, is more akin in the principle of its operation to that of Taliaferro than any other cited. The principle of this patent is different from the principle of the patent in suit at least in the respect that it fails altogether to perform one of its functions. Instead of being a box in which is buried or enveloped in bran successive pairs of rolls horizontally arranged, running at different speeds and so separated that through the space between them the plate may be carried along by contact with layers of moving bran, the rollers of the machine of the Jenkins patent are buried in boxes of bran and are vertically arranged, and consist of two vertical rolls separated one from the other sufficiently to allow the ingress of bran and the coating of the rolls with bran, forming on them a tire or jacket; the cleansing and polishing of the plate being accomplished by contact of the bran coated rolls with the plate, thereby cleansing the plate in a way close in theory with that of the patent in suit. But in the machine of the Jenkins patent the rolls move at equal speed and do not contemplate the feeding or cleansing of the plate by the action of the moving bran, nor does it perform the double function of feeding and cleansing the plate by the one set of rolls, the plate under this patent being propelled and its movement regulated by machinery or by hand outside of and beyond the cleansing machinery, and the polishing or cleansing being to some extent necessarily effected and controlled by the same means.

The Player and Mainwaring English patent, No. 16,108 of 1893, is for an invention consisting of an arrangement of rolls in pairs, not buried in bran. The two rolls of each pair, like the rolls of the machine of the patent in suit, revolve at different speeds. The plate is delivered to the first pair, and unlike the machine of the Jenkins type, and like the machine of the patent in suit, it "is by them passed on to

the next without the intervention of carrying rolls." The cleansing of the plate is effected in the machine of this patent by the differentiation in the speed of the rolls. Both "surfaces of the sheet are *rubbed* alternately *by* the top and bottom *rollers* of the successive pairs. * * * Each pair of rollers *is in contact,* but kept from undue friction by means of springs." Great reliance is placed by the defendant upon this patent to show that the invention claimed by the patent in suit was anticipated by Player and Mainwaring.

The machine of this patent is distinguished from the machine of the patent in suit, we think, in several respects:

There is nothing to suggest that the rolls are buried in bran. On the contrary, the language of the patent is that the rolls are "fed" with bran.

While the Player and Mainwaring patent states that the "rolls are kept apart at the proper distance by springs inserted between the bearings," yet the other language of the patent calls for the rolls to be "in contact" and the polishing to be done by rubbing, not by layers of bran, but by the rolls. This is about, if not precisely, what the infringing machine is claimed to do, but is wholly different from what is claimed by the patent in suit.

The twofold use to which the bran is put in the Taliaferro machine, namely, feeding as well as rubbing the plate, we do not find in any machine of the prior art, nor does any one of the machines cited as representing the prior art contain a structural or mechanical organization which would without substantial alteration permit the essential principle of the operation of the Taliaferro machine to be realized.

In the case below, and in the argument on appeal, considerable stress was laid by the defendant in support of its claim that the rolls of the Taliaferro machine were not in fact adjusted so that they would remain apart, but that they were adjusted, like its own machine, to cause the rolls to be in contact. This we do not find to be the case. We find a contrivance in the patented machine by which the rolls are held in place, but not necessarily held rigidly separate one from another. The specifications of the patent in this particular allude to a device for holding the rolls "yieldingly separated," which result is either effected or assisted by the use of a spring between the portions of the machine holding the shafts and controlling the position of the rolls. We do not think that the patent requires, in the face of its term holding the rolls "yieldingly separated," that the rolls must be rigidly adjusted, for by the aid of the springs between the shafts of the ends of the rolls certain play was intended.

The defendant's theory that the rolls in the patented machine are held rigidly together, and not yieldingly separated, contradicts not only the express language of the specification, but renders the springs found in the patented machine superfluous and purposeless. It seems to us the very purpose of providing and using the spring mountings of the patent in suit is to allow a separation of the rolls, and to permit that separation to yield or accommodate itself to the work. The springs are *between* the shafts and press the rolls apart. If the springs were

above and below the shafts, they would then press the rolls together, and the defendant's claim of contact of the rolls in the Taliaferro machine would then be supported.

We do not find the rolls in the patented machine so adjusted as either to create contact or avoid separation, and we concur with the court below that the extent of separation of the rolls—that is, the exact measure of distance from one roll to the other—is unimportant, so long as there is a separation between the rolls sufficient to permit the passage between them of layers of bran which grip, drag, and clean the plate in transit.

We have already said the controversy in this case is narrowed to what happens between the rolls of the two machines. The defendant admits, as it must admit to avoid the charge of infringement, that its rolls are in contact, and the plate is gripped and cleansed by the motion of the rolls, aided by such quantity of bran as may adhere to their fibrous surfaces, and the defendant charges, as it must charge to establish the invalidity of the Taliaferro patent on the ground of anticipation, that the Taliaferro rolls do precisely the same thing, and that the plate is not gripped and cleansed by layers of bran driven in between separated rolls. Upon this issue there is conflict, but from the testimony we are satisfied that the rolls of the Taliaferro machine are adjusted apart, and the gripping and cleansing function of the Taliaferro machine is performed in the way claimed by the patent; and although it is vigorously asserted by the defendant that the rolls of the Anderson machine are operated in contact, and that the plates in the Anderson machine are gripped and cleansed by the direct operation of the rolls, we are equally satisfied that the rolls of the Anderson machine are so yieldingly adjusted as to permit bran to pass between the plates and the rolls, and thus effect the same functional result which was first disclosed in Taliaferro's patent. While we arrive at this conclusion after a careful consideration of all the testimony, we will here restrict ourselves to quoting the testimony of but one witness.

Arthur S. Brown, a witness called on behalf of the complainant, testified that he had seen nine Anderson machines in operation at the factory of the defendant, the Washington Tin Plate Company, and that—

"in every instance in those machines, when the tin plate passed through here, passed through the bran box as the plate emerged at the discharge end of the bran box, it always came out with a very thick covering of bran, and also, when another plate is passing through, there is always a thick layer of bran being fed out from the final pair of rollers. Also on one occasion I had one of the rollers removed from one of the machines—in the first instance, had the upper roll at the discharge end of the bran box removed, and on that occasion the sheet was left in the machine, and on removing this upper discharge end roller there was a thick layer of bran covering the tin plate, and on lifting the edge of the tin plate up there was seen to be a layer of bran between the under side of the tin plate and this layer here; also on that occasion the next pair of rollers in that machine were so far apart that an ordinary lead pencil could be thrust in between the rollers. On the second occasion I had the next to the last of the upper rollers of the bran box removed with no plate in and that showed a layer of bran covering and concealing the plate beneath, and a lead pencil could be readily thrust between the next pair of rollers."

While the yielding surfaces of the rolls might readily enable a lead pencil to be thrust between them, and such an experiment might be a doubtful test of the relation of the rolls to one another, yet the layers of bran upon the tin plate necessarily show that in the Anderson machine the rolls are not in contact, but are separated so as to enable layers of bran to pass through with the plate precisely as in the Taliaferro patent.

The decree of the court below is affirmed.